# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| WHITE LODGING SERVICES CORPORATION; AND WESAUS, LLC, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO.   1:17-cv-277 |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | § § § | JURY DEMANDED |
| Defendant. | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs White Lodging Services Corporation ("White Lodging") and Wesaus, LLC (collectively "Plaintiffs" or "White Lodging") file their Original Complaint against Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") as follows:

### I. PARTIES

1.      White Lodging Services Corporation is an Indiana corporation with its principal place of business in Merrillville, Indiana.

2.      Wesaus, LLC is a limited liability company organized under the laws of the state of Indiana with its principal place of business in Merrillville, Indiana.  None of the members of Wesaus, LLC is a citizen of Wisconsin or Massachusetts.

3.      Liberty Mutual Fire Insurance Company is a Wisconsin corporation with its principal place of business in Boston, Massachusetts.  Liberty Mutual is engaged in the business of insurance in the state of Texas and can be served through its registered agent for the service of

**PLAINTIFFS' ORIGINAL COMPLAINT**                                      **Page 1**

process, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## II.  JURISDICTION & VENUE

4.      The foregoing paragraphs are incorporated herein by reference.

5.      This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) and (c) because Defendant is not a citizen of any state of which Plaintiffs are also citizens, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Austin, Texas.

## III.  FACTUAL BACKGROUND

### A.      The Parties & Project

7.      White Lodging Services Corporation is a hotel ownership, development and management company.

8.      White Lodging developed the Westin Austin Downtown Hotel, located at 310 E. 5th Street in Austin, Texas (the "Westin Austin Downtown Hotel" or the "Westin Project").

9.      Wesaus, LLC is a single-purpose entity formed to own and operate the Westin Austin Downtown Hotel.

10.      Hunt Construction Group, Inc. ("Hunt") served as general contractor for the Westin Project.

11.      The Westin Austin Downtown Hotel is a 20-story facility with 366 guest rooms and 19,000 square feet of state-of-the-art meeting and banquet space.

12.     Construction of the Westin Project required large scale excavation to a depth of approximately forty-five (45) feet below grade, including more than twenty (20) feet of excavation into the native limestone at the project site.

13.     Hunt retained Berkel & Company Contractors, Inc. ("Berkel") as subcontractor responsible for the excavation.

14.     Berkel designed and constructed a support system for the excavation consisting of a series of "soldier beams" installed into pre-drilled holes at intervals along the base adjoining the excavation walls.

15.     The soldier beams were connected by rows of horizontal wooden beams or "lagging" to a depth of approximately twenty (20) feet below grade.

16.     For the remaining twenty (20) feet of the excavation, the limestone wall is exposed in between each soldier beam.

17.     The beams were held in place against the excavation wall by tensioned metal strands or "tiebacks" connected to the soldier beams at one horizontal level approximately ten (10) feet below grade and anchored inward of the excavation in the limestone below.

**B.      The Policy**

18.     During the construction of the Westin Hotel, White Lodging carried builders' risk insurance under a policy issued by Liberty Mutual.

19.     Liberty Mutual issued Policy No. YM2-L9L-445136-093 (the "Policy") to White Lodging Services Corporation for the period from July 22, 2013 through March 22, 2015.

20.     Wesaus, LLC is an additional insured under the Policy.

21.     The Policy provides coverage for direct physical loss or damage caused by a covered peril to (1) "buildings or structures" while in the course of construction, erection, or

fabrication; and (2) scaffolding, construction forms, and temporary structures.  The "buildings or structures" insured by the Policy include, among other things, "foundations, excavations, grading, filing, attachments, permanent fencing, and other permanent fixtures."

22.     The "covered perils" insured by the Policy include all "risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded."

23.     The Policy contains, among other things, an "Earth Movement" Exclusion and a "Defects, Errors and Omissions" Exclusion.

24.     The Earth Movement Exclusion refers to "[a]ny 'earth movement' whether natural or manmade and regardless of cause and regardless of whether or not the cause of the 'earth movement' (1) originated at the covered property; or (2) was being performed at 'your' [White Lodging's] request or for 'your' [White Lodging's] benefit."

25.     For purposes of the Earth Movement Exclusion, "earth movement" means "[t]he movement of the ground, soil, sediments, substrates, or strata whether the movement is caused by an act of nature or is manmade, including but not limited to . . . any other ground movement, including sinking . . . , shifting, contraction, or rising of the ground . . . that cause cracking, settling, tilting, leaning, or shifting of covered property."

26.     The Defects, Errors and Omissions Exclusion states "[w]e do not pay for loss or damage consisting of, caused by, or resulting from an act, defect, error or omission (negligent or not) relating to (a) design, specifications, construction, materials, or workmanship . . . ."

27.     The Defects, Errors and Omissions Exclusion is also subject to the following exception: "if an act, defect, error, or omission as described above results in a covered peril, 'we' do cover the loss or damage caused by that covered peril."

**PLAINTIFFS' ORIGINAL COMPLAINT**                                          **Page 4**

28.     In addition to covering the cost to repair and replace covered property that sustains loss or damage from a non-excluded peril, the Policy also includes a "Delay in Completion Coverage Part."

29.     The Delay in Completion Coverage Part promises payment for "actual loss of rental income incurred during the 'delay period,'" which refers to "the period of time the completion of the construction, erection, or fabrication of a covered 'building or structure' is 'delayed' as a result of direct physical loss or damage caused by a covered peril to property covered under the Builders' Risk Coverage form . . . ."

## C.     The Collapse

30.     On November 16, 2013, two soldier beams—Nos. 7 and 8 on the North wall of the excavation—collapsed.

31.     The downward fall of these soldier beams slackened the tension on the tiebacks holding the beams against the excavation wall and allowed the beams and attached wood lagging to lean inward into the excavation, leaving a gap between the excavation wall and the displaced soldier beams and lagging.

32.     A third beam—No. 11, also on the North wall of the excavation—collapsed weeks later on or about December 1, 2013.

33.     The failure of soldier beam Nos. 7, 8 and 11 are hereinafter referred to as the "Collapse."

34.     To remediate the Collapse, Berkel took immediate steps to stabilize the beams by placing an earthen berm against the excavation wall and filling in the void that had developed behind the collapsed beams and associated lagging.

35.     Berkel then dug a shaft behind the beams and lagging to access and re-tension the tiebacks.  The access shaft was later refilled.

36.     In order to avoid immediate failure of additional soldier beams, Berkel bolted the soldier beams at one horizontal level to the adjacent limestone wall and covered the limestone surface with shotcrete.

37.     The work performed by Berkel to remediate the Collapse significantly delayed the final completion of the Westin Project, resulting in the loss of considerable rental income to White Lodging.

**D.      The Claim**

38.     White Lodging provided notice of the Collapse at the Westin Project to Liberty Mutual on November 16, 2013 (the "Claim").

39.     After an initial site inspection in 2013 and pending receipt of additional information from White Lodging and Hunt, Liberty Mutual closed its file without issuing a coverage determination in December 2014.

40.     In 2015, White Lodging submitted an updated claim for approximately $7.8 million of lost rental income relating to the Collapse.

41.     On December 30, 2015, Liberty Mutual denied coverage for the Claim citing the Earth Movement Exclusion and the Defects, Errors and Omissions Exclusion as the alleged basis for its coverage position.

42.     Despite its initial denial of coverage, Liberty Mutual continued throughout 2016 to request information from White Lodging regarding its Claim.

43.     White Lodging provided information responsive to Liberty Mutual's requests.

44.     After denying coverage for the Claim in December 2015, Liberty Mutual retained Engineering Systems, Inc. ("ESI") to investigate and analyze the cause of the Collapse at the Westin Project.

45.     ESI performed its investigation and analysis after the Collapse had been repaired and the conditions relating to the soil retention system at the Westin Project were no longer available for review or inspection.

46.     ESI issued a report, dated May 17, 2016, in which ESI opined that the Collapse was caused by alleged deficiencies in the design and construction of the soil retention system.

47.     ESI further opined that rain did not cause the Collapse.

48.     ESI did not opine that earth movement of any kind caused or contributed to the Collapse.

49.     In June 2016, Liberty Mutual retained Madsen, Kneppers & Associates, Inc. to assist Liberty Mutual with its investigation of the Claim as a "construction consultant."

50.     In the months that followed, White Lodging provided additional information relating to the Claim and participated in discussions with Liberty Mutual regarding the value of the lost rental income portion of the Claim.

51.     Despite the progress made in discussions between White Lodging and Liberty Mutual regarding this Claim, on February 3, 2017, Liberty Mutual issued further correspondence affirming its denial of coverage for the Claim.

52.     Despite its stated reliance on the Earth Movement Exclusion, Liberty Mutual has not identified—in any of its denial letters to White Lodging—any facts indicating that "earth movement" caused or contributed to the Collapse at the Westin Project.

53.     Liberty Mutual's denial of coverage for the Claim fails to account for the following exception in the Defects, Errors and Omissions Exclusion: "if an act, defect, error, or omission as described above results in a covered peril, 'we' do cover the loss or damage caused by that covered peril."

54.     If, *arguendo*, any act, defect, error or omission in the design, specifications, construction, materials, or workmanship relating to the excavation support system at the Westin Project caused or contributed to the Collapse, the ensuing damage and loss of rental income sustained by White Lodging is covered and not excluded by the Policy.

55.     Liberty Mutual's denial of coverage is not supported by the facts, the terms of the Policy or applicable law.

56.     As a result of Liberty Mutual's wrongful denial of coverage, White Lodging has sustained substantial damages.

## IV.  CAUSES OF ACTION

**A.      Breach of Contract**

57.     The foregoing allegations are incorporated herein by reference.

58.     The Policy is a valid, enforceable contract.

59.     White Lodging Services Corporation and Wesaus, LLC are insured under the Policy and have standing to assert claims under the Policy.

60.     White Lodging has satisfied all conditions under the Policy.

61.     The terms of the Policy unambiguously provide coverage for the Claim.

62.     Alternatively, the terms of the Policy, including the Earth Movement Exclusion and the Defects, Errors and Omissions Exclusion are ambiguous and should be construed in favor of coverage.

63.     Liberty Mutual has breached the Policy by denying coverage for the Claim.

64.     Liberty Mutual's breach has caused White Lodging substantial damages.

**B.      Chapter 542 of the Texas Insurance Code**

65.     The foregoing allegations are incorporated herein by reference.

66.     White Lodging has made a claim under the Policy for the loss of rental income sustained as a result of the Collapse and has satisfied all conditions under the Policy.

67.     Liberty Mutual has engaged in conduct that constitutes violations of Chapter 542 of the Texas Insurance Code by delaying and/or failing to timely pay White Lodging's rental income loss in connection with the Claim.

68.     Consequently, White Lodging is entitled to the damages set forth in § 542.060 of the Texas Insurance Code, including, in addition to the amount of White Lodging's rental income loss, interest at the rate of eighteen percent (18%) per annum as well as any and all other relief provided therein.

**C.      Attorneys' Fees**

69.     The foregoing allegations are incorporated herein by reference.

70.     Due to the actions of Liberty Mutual, White Lodging has been required to retain the services of the law firm of Haynes and Boone, LLP.  White Lodging has agreed to pay Haynes and Boone a reasonable fee for its services necessarily rendered and to be rendered in this action. Pursuant to Section 38.001 of the Texas Civil Practice & Remedies Code and/or Section 542.060 of the Texas Insurance Code, White Lodging is entitled to an award of its reasonable attorneys' fees against Liberty Mutual in an amount to be established at trial.

## V.  NOTICE OF INTENT TO PURSUE CLAIM UNDER CHAPTER 541 OF THE TEXAS INSURANCE CODE

71.     The foregoing allegations are incorporated herein by reference.

72.     Pursuant to § 541.154 of the Texas Insurance Code, White Lodging hereby provides notice of its intent to pursue a claim against Liberty Mutual under § 541.151 of the Texas Insurance Code by amending this suit after 60 days.

73.     Liberty Mutual has engaged in unfair or deceptive acts or practices as defined by Section 541.061 of the Texas Insurance Code.

74.     Liberty Mutual has violated Section 541.060(1) of the Texas Insurance Code by misrepresenting that earth movement caused the Collapse at the Westin Project, when no evidence, including the report prepared by Liberty Mutual's own consultant, ESI, supports such an assertion.

75.     Liberty Mutual has violated Section 541.060(2) of the Texas Insurance Code by refusing coverage for the Claim when its liability was reasonably clear.

76.     Liberty Mutual has violated Section 541.060(3) of the Texas Insurance Code by denying coverage for the Claim on the basis of the Earth Movement Exclusion without providing any factual or legal basis for such an assertion.

77.     Liberty Mutual has violated Section 541.060(7) of the Texas Insurance Code by refusing coverage for the Claim without conducting a reasonable investigation with respect to the cause of the Collapse at the Westin Project.

78.     As a result of Liberty Mutual's conduct, White Lodging has suffered damages in an amount no less than $7.8 million as well as attorneys' fees in an amount not less than $15,000.

79.     Liberty Mutual knowingly committed one or more of the violations referenced above and thus White Lodging seeks, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

## VI.  JURY DEMAND

80.     White Lodging hereby requests a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VII.  PRAYER

WHEREFORE, Plaintiffs White Lodging Services Corporation and Wesaus, LLC respectfully request that this Court grant it the following relief:

(1)     Judgment awarding Plaintiffs all damages caused by Defendant's breach of the Policy;

(2)     Judgment awarding Plaintiffs all damages sustained as a result of Defendant's violations of Chapter 542 of the Texas Insurance Code;

(3)     Judgment awarding Plaintiffs all reasonable and necessary attorneys' fees and expenses incurred in this matter under Chapter 38 of the Texas Civil Practice & Remedies Code and Chapter 542 of the Texas Insurance Code;

(4)     Judgment awarding Plaintiffs pre-judgment and post-judgment interest in the amount allowed by law;

(5)     Judgment awarding Plaintiffs all costs of court; and

(6)     Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,


*/s/ Micah E. Skidmore*_____
Micah E. Skidmore
Texas Bar No. 24046856
*micah.skidmore@haynesboone.com*
HAYNES AND BOONE, L.L.P.
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone:      (214) 651-5000
Telecopier:     (214) 651-5940

ATTORNEY FOR PLAINTIFFS WHITE LODGING SERVICES CORPORATION AND WESAUS, LLC